IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

NORMA EDITH RODRIGUEZ SANCHEZ )
Petitioner, )
)
v. ) Case No. 4:20-cv-77
)
JUSTINO FAUSTO PERALTA-RANGEL )
Respondent, )

**VERIFIED PETITION UNDER HAGUE CONVENTION SEEKING RETURN OF CHILD TO PETITIONER, IMMEDIATE ISSUANCE OF SHOW CAUSE ORDER TO RESPONDENT, AND REQUEST FOR EXPEDITED HEARING ON MERITS**

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague On October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.***

**INTRODUCTION**

1. This Petition (the "Petition" or "Hague Petition") is brought by Norma Edith Rodriguez Sanchez ("Petitioner"), a citizen of Mexico, through her undersigned counsel, to secure the return of her eleven-year-old daughter, A.P.R. (or the "Child"), to Mexico—the habitual residence of the child. A.P.R. was wrongfully retained, without Petitioner's consent or acquiescence, while A.P.R. was visiting family in the United States and subsequently prevented from returning to Petitioner in Mexico by Respondent Justino Fausto Peralta-Rangel ("Respondent"), the child's father.

2. This Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980[1] (the "Hague Convention" or

---
[1] T.I.A.S No. 11,670, at 1, 22514 UN.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).

1

"Convention"), and the International Child Abduction Remedies Act[2] ("ICARA"). The Convention came into effect in the United States of America on July 1, 1988, and has been ratified between, among other Contracting states, the United States of America and Mexico in 1991. A copy of the Hague Convention is attached hereto as Exhibit 1.

3. The goals of the Hague Convention are as follows: (1) to secure the immediate return of a Child wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and access under the law of one Contracting State are effectively respected in other Contracting States.[3]

4. The Hague Convention applies to cases where a child under the age of sixteen (16) years has been wrongfully removed from his or her state of habitual residence or has been wrongfully retained, in breach of a right of custody of the petitioner. Convention, Arts.1, 3, 4, and 5. A petitioner establishes a *prima facie* case under the Hague Convention if he or she proves three elements: (1) prior to removal or wrongful retention, the child was habitually resident in a foreign country; (2) the removal or retention was in breach of custody rights under the foreign country's law; and (3) the petitioner actually was exercising custody rights at the time of the removal or wrongful retention. Convention, Arts. 3-4.

---

[2] 22 U.S.C. § 9001 *et. seq*. ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances. *See Distler v. Distler*, 26 F.Supp. 2d 723, 727 (D. N.J. 1998).

[3] The Hague Convention authorizes a federal district court to determine the merits of the abduction claim but does not allow it to consider the merits of any underlying custody dispute. *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993). The district court's role is not to make traditional custody decisions but to determine in what *jurisdiction* the Children should be physically located so that the proper jurisdiction can make those custody decisions. *Loos v. Manuel*, 651 A.2d 1077, 1079 (N.J. Super. Ct. Ch. Div. 1994).

2

5. When the petitioner establishes a *prima facie* case under the Hague Convention, then the abducted child must be returned to his or her country of habitual residence unless the respondent can satisfy the requirements of one of the few affirmative defenses. Convention, Art. 4. Even if the respondent successfully demonstrates an affirmative defense, the Court may nonetheless order return of the child if doing so would further the Hague Convention's goals. *Id.*

6. As explained below, Petitioner can meet all three elements for a *prima facie* case because A.P.R. is under the age of sixteen (16), Mexico is her country of habitual residence,[4] Petitioner was exercising her custodial rights of A.P.R. at the time A.P.R. was retained,[5] and A.P.R.'s retention by Respondent was wrongful. *See* also Exhibit 2, Civil Code for the State of Tamaulipas, Mexico (the "Civil Code").

## PARTIES AND JURISDICTION

7. Petitioner is a citizen of Mexico and has resided at the same residence in Tamaulipas, Mexico since 2010. Respondent is a citizen of Mexico and upon information and belief, he does not have any legal immigration status in the United States.

---

[4] "Habitual residence" is not defined by a specified period of time. It is the place where the Child has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose from the Child's perspective. In *Monasky v. Taglieri*, 140 S. Ct. 719 (2020), the Supreme Court held that this is a fact-driven inquiry, and that an actual agreement between the parents was not solely determinative. The Court stated, in part, that the decision is "sensitive to the unique circumstances of the case and informed by common sense." *Id.* at 727.

[5] "[T]he removal of a Child from the country of his or her habitual residence is "wrongful" under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the Child under that country's law at the moment of removal." *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996); *see Prevot v. Prevot*, 59 F. 3d 556, 560 (6th Cir. 1995); Convention, art. 3.

3

8. This Court has jurisdiction over this action pursuant to 22 U.S.C. § 9003(a). Furthermore, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because it involves the wrongful removal and retention of a Child under the age of sixteen (16) from her habitual residence of Mexico to the United States.[6]

9. Venue is proper in this district pursuant to 22 U.S.C. § 9003 because A.P.R. is currently located in Angier, NC in the Eastern District of North Carolina, as well as under 28 U.S.C. § 1391(b) because, among other reasons, Respondent currently resides in the Eastern District of North Carolina.

## FACTUAL BACKGROUND

**I. Facts Prior to the Child's Wrongful Retention in the United States**

10. A.P.R. was born in Raleigh, North Carolina, on May 11, 2008, to Petitioner and Respondent. The parties were never married but lived together for the first 18 months of the minor child's life in Raleigh, North Carolina. Then, Petitioner and child, with the consent of Respondent, relocated to Tamaulipas, Mexico, to live with Petitioner's parents and two other children.

11. The minor child is currently under the age of 16; she is nearly twelve years old. A true and correct copy of her birth certificate is attached hereto as Exhibit 3. She is a citizen of both the United States of America and Mexico.

12. A.P.R. resided in Tamaulipas, Mexico continuously from 2010 until December 19, 2018 at the same residence. During that time, A.P.R. resided with Petitioner and received all medical care and education in Mexico at the direction and care of Petitioner. She attended school regularly in Tamaulipas, received excellent grades in school and acquired

---

[6] *Toren v. Toren*, 191 F. 3d 23 (1st Cir. 1999).

4

various accolades. *See* Exhibits 5-8. She enjoyed living with and spending time with her younger siblings, Petitioner and Petitioner's husband as a family.

13. Respondent remained in the United States, and had de minimis contact with A.P.R. for eight years. Respondent missed many birthdays and holidays, and repeatedly failed to provide emotional or financial support to A.P.R. Respondent was aware of how to communicate with Petitioner and A.P.R. if he desired to do so and knew that A.P.R. resided at the same residence since she arrived in Mexico. Respondent has created a new family with children here in North Carolina.

14. In late 2018, Petitioner decided to send A.P.R. to the United States for a semester long visit with Petitioner's sister, Alejandra Rodriguez Sanchez (hereinafter "Alejandra"). The visit would include a semester in a United States school to further develop A.P.R.'s English skills.

15. Respondent was not consulted on the travel plans, schedule or educational goals for A.P.R. Therefore, he was unaware of A.P.R.'s plans to visit the United States.

16. Although Respondent authorized a general renewal of A.P.R.'s United States passport in October 2018, as required by United States law, he was not informed of specific plans for a visit at that time, and tickets were not purchased until December of 2018, just a few weeks in advance of the travel date.

17. Petitioner's family paid for and purchased plane tickets for the visit and A.P.R.'s cousin, Cindy Rodriguez (hereinafter "Cindy"), traveled with A.P.R. from Mexico to the United States to ensure her safety. *See* Exhibit 12.

18. A.P.R. came here with one small suitcase, leaving almost all belongings back home in Mexico for her eventual return.

19. Petitioner and A.P.R. were in contact every day during her time in the United States with Petitioner's family and prior to her wrongful retention.

20. A.P.R. was enrolled in school in Alejandra's school district. Respondent was not consulted on the choice of school.

21. Upon information and belief, approximately one week after A.P.R.'s arrival, Respondent learned she was present in Johnston County, North Carolina and came to Alejandra's home intoxicated and without invitation.

22. Upon information and belief, following this unannounced visit, Respondent had a few visits with A.P.R. between January and mid-February. A.P.R. was accompanied by her cousin, Rachel, during most visits.

23. However, in February, A.P.R. expressed her desire to stop seeing Respondent, and return to Petitioner in Mexico earlier than initially planned, before the end of the semester. She has repeatedly expressed feelings of homesickness and a desire to return home to Petitioner since February 2019.

24. No further visits took place between Respondent and A.P.R. until her wrongful removal and retention by Respondent on May 10, 2019.

**II. The Child's Wrongful Removal or Retention and Subsequent Events**

25. On May 10, 2019, Respondent appeared unannounced at A.P.R.'s school with a copy of her birth certificate and demanded that A.P.R. be released into his custody. The school contacted Cindy and Alejandra, who reported to school, and contacted Petitioner.

26. Upon information and belief, A.P.R. was visibly distressed and expressed that she did not want to go with Respondent. However, she was released to his custody.

6

Case 4:20-cv-00077-D    Document 2    Filed 05/08/20    Page 6 of 16

27. In the days that followed, Respondent frustrated Petitioner and her family's ability to contact A.P.R. Petitioner nonetheless sent a birthday text to A.P.R. on the same date. She does not know if A.P.R. ever received it. *See* Exhibit 9.

28. Petitioner attempted to contact Respondent multiple times after May 10, 2019. On at least one occasion, Respondent answered the phone and threatened to move with A.P.R., so Petitioner could not find them.

29. Within days of the wrongful removal and retention of the child, Petitioner and family took swift action to secure the return of A.P.R. including the following:

    a. On May 16, 2019, Petitioner filed her Application under the Hague Convention. *See* Exhibit 4.

    b. On May 24, 2019, Petitioner, with the assistance of her family, consulted with an attorney in North Carolina and Petitioner executed a Power of Attorney to assert her rights and have A.P.R. returned. This, however, was insufficient to secure A.P.R.'s return.

    c. Within weeks of May 10, 2019, Petitioner's family contacted the police in an effort to have A.P.R. returned to their care. The officer completed a brief welfare check, spoke with Respondent's wife, and told Petitioner's family that nothing further could be done.

30. During May and June of 2019, Petitioner struggled to communicate and ensure the child was safe; she used a secret cellphone, provided to A.P.R. by Petitioner's family, to do so on a sporadic basis.

31. On July 9, 2019 the U.S. State Department mailed a letter informing Respondent of Petitioner's Hague Application filing. *See* Exhibit 10.

32. On July 19, 2019, Respondent filed a child custody action in North Carolina state court in Johnston County with the assistance of counsel. *See* Exhibit 13.

33. On July 22, 2019, Respondent's counsel on the custody action responded to the U.S. Department of State with a request to provide assistance in the service of the custody action. Counsel stated in part, "we do not have a confirmed residential address in Mexico for the mother." Petitioner has not moved residences since 2010. *See* Exhibit 11.

34. Upon information and belief, Respondent is currently residing with A.P.R. at 192 Smith Drive, Angier, North Carolina 27501 in the Eastern District of North Carolina.

35. Upon information and belief, Respondent permits some communication between Petitioner the child but continues to screen their communications, and A.P.R. still wishes to return home to Mexico.

## **GROUNDS FOR THE RETURN OF THE MINOR CHILD**

**I.    Prior to her wrongful removal or retention in the United States, Mexico was A.P.R.'s country of habitual residence.**

The first element of a *prima facie* case under the Hague Convention requires the Court to determine the country in which "the child was habitually resident before the removal or retention." Convention, Art. 3a. Since the Convention does not define habitual residence, the Fourth Circuit has developed a two-part conceptual framework to determine a child's habitual residence. Under this framework, "[t]he court first examines whether the parents shared a settled intention to abandon the former country of residence. The court then examines the extent of the child's acclimatization to the new country of residence." *Judge v. Williams*, Case No. 11-CV-119-F, 2011 WL 3100346, at *3 (E.D.N.C. Jul. 25, 2011) (citing *Maxwell v. Maxwell*, 588 F.3d 245, 251 (4th Cir. 2009)). Earlier this year, the United States Supreme Court weighed in to

8

establish a new fact-driven inquiry for habitual residence, imposing even the application of "common sense" to the determination of the habitual residence. *See Monasky v. Taglieri,* 140 S. Ct. 719 (2020).

In the case at hand, the totality of facts support a determination that Mexico is the habitual residence of A.P.R. Significantly, Petitioner and Respondent agreed to the child moving with Petitioner to Mexico in 2010, when the child was only eighteen months old. Mexico is the home country of both Parties. After the move to Tamaulipas, Mexico, Respondent had limited contact with the child, but he was fully aware that she was residing there and has never objected to it.

When Petitioner contemplated allowing A.P.R to visit the United States, the Petitioner never consulted with Respondent because he had not been a significant presence in the child's life. Therefore, there was no agreement between the Parties on the child coming or staying in the United States.

Overwhelmingly, the facts show that even Petitioner's lone intent was to provide a temporary educational opportunity for the child in the United States with Alejandra, Petitioner's sister. The child brought a single suitcase with her and maintained daily contact with the Petitioner. In February 2019, just a few months after A.P.R's arrival here, the child had already expressed a desire to return home to Mexico. Petitioner did not have funds to return the child at that time, but she continued to plan for the child's scheduled return at the end of the semester.

Further, after the wrongful removal and retention of the child, Petitioner never consented or acquiesced to the child remaining in the United States past a single semester of school. Any habitual residence analysis still factors in that "a parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001). The Respondent's wrongful retention of the child cannot then amount to the

9

establishment of the child's habitual residence in the United States. After her wrongful removal or retention, Petitioner immediately took swift action to secure her return, including filing a Hague Application within days of her wrongful retention.

Lastly, even if the *Monasky* analysis now includes consideration of the child's acclimatization to the United States, that factor weighs in favor of finding that Mexico is the habitual residence. *See generally Monasky,* 140 S. Ct. at 719. Nonetheless, with regards to child's acclimatization, the child continuously resided in Tamaulipas, Mexico, for over eight years. She began living in Mexico before she was two years old with the consent of both Parties. She learned to speak Spanish as her primary language. She enjoyed playing with and spending time with her younger siblings, Petitioner and Petitioner's husband as a family unit. She attended the same school in Tamaulipas until she departed for her visit to the United States. She spent one semester in school in the United States before her wrongful removal and retention by Respondent. And, the child has expressed a desire to return home many times and continues to do so. She has not acclimated to the United States and a return to Mexico will be an easy transition for the child.

Because there was no shared intent by the Parties to abandon Mexico as the child's country of habitual residence, as well as the child's lack of acclimatization to the United States, the Court should conclude that Mexico is the child's country of habitual residence.

## II. The wrongful removal or retention of A.P.R. in the United States is in breach of Petitioner's right of custody under Mexican law.

Under the next element of a *prima facie* case under the Hague Convention, the Court must apply the law of the country of habitual residence to determine if the Petitioner had custody rights in that country at the time of the wrongful removal or retention of the child. Convention,

10

Case 4:20-cv-00077-D    Document 2    Filed 05/08/20    Page 10 of 16

Art. 3. Pursuant to the relevant law of Mexico, Petitioner has a right to custody of the minor child under the doctrine of *patria potestas* of the minor child. *See* Exhibit 2. She and Respondent were not married at the time of the child's birth, but both of their names are on the birth certificate. No custody order or agreement has been in place in Mexico or any other country to terminate her rights or reduce them. Article 382 of the Civil Code provides that the responsibilities involved with custody include the care and education of the minor child. *See id.* at 2. Further, the relevant Mexican law provides that a parent's right to spend time with the minor child shall not be prevented, lost or cancelled except by judicial order. *See id*. at 3. From 2010 to May 10, 2019, Petitioner held the responsibility to ensure the child's health care and education needs were met. When she decided to permit a semester-long stay for the child in the United States, she oversaw the travel plans and ensured the child was taking full advantage of her education and completing her homework. She had daily contact with the child and with Petitioner's relatives, who were tending to the daily needs of the child. Respondent and Petitioner never communicated or agreed to the minor child moving in with the Respondent or living permanently in the United States prior to or during the child's visit.

Since the child's wrongful removal or retention, Respondent has thwarted the child's efforts to communicate with Petitioner, breaching her custodial right to spend time with the minor child and enjoy a close personal relationship. Additionally, he acted to breach Petitioner's shared custody right regarding decision-making for the child because he unilaterally chose to retain the child in the United States and deny Petitioner her right to decide where the child will reside.

Because Petitioner has established that she has a right to custody under Mexican law and Respondent breached those custody rights by wrongfully retaining the minor child and limiting

11

her communication with the child, Petitioner has met the second element of the *prima facie* case under the Hague Convention.

III. **At the time of the wrongful removal or retention of A.P.R. in the United States, Petitioner was actively exercising her custodial rights under Mexican law.**

Petitioner also meets the final prong of the *prima facie* case for return of the minor child to Mexico. At the time of Respondent's wrongful removal or retention of A.P.R. in the United States, Petitioner was actively exercising custody rights within the meaning of Articles Three and Five of the Hague Convention and within the meaning of Mexican law. The Fourth Circuit Court of Appeals has liberally construed the exercise of custodial rights, finding "'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996.) Under this construction, "a person [who] has valid custody rights to a child under the law of the country of the child's habitual residence . . . cannot fail to "exercise" those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." *Id.* Petitioner has been an active caregiver for the minor child since her birth until the Respondent's wrongful removal and retention of the minor child. Petitioner made the decision to broaden A.P.R.'s education by sending her to have a semester-long visit with Petitioner's sister; she coordinated with her family to ensure A.P.R.'s safe arrival and stay. A few months after the child arrived in the United States, the child expressed a desire to return home and continued to express homesickness to the Petitioner. In turn, until the child's wrongful removal or retention, Petitioner maintained daily contact with the

12

minor child to provide emotional support and to sustain connection to the child and her home and family.

Based upon these facts, the Petitioner has met the lenient standard for showing that she was actually exercising her custody rights at the time of the wrongful retention and has met the final element of the *prima facie* case under the Hague Convention.

## ATTORNEY FEES AND COSTS

Petitioner has incurred attorneys' fees and additional costs as a result of the wrongful retention of A.P.R. by Respondent. Petitioner does not have the means to pay those expenses.

## CLAIM FOR RELIEF[7]

Under the aforementioned Mexican law and the Hague Convention, Petitioner can prove a *prima facie* case for the return of the child to Mexico, A.P.R.'s habitual residence. The Respondent has wrongfully removed or retained the child from her habitual residence in breach of Petitioner's custody rights. Petitioner further notes that she submitted her Hague Application in the Central Authority on May 16, 2019. *See* Exhibit 4. She then needed time to find pro bono counsel and is filing this Petition within one year of the child's wrongful removal or retention, requesting the child's immediate return. In light of the serious allegations and remedies requested in this Hague Petition, Petitioner also requests that a preliminary hearing be set on an

---

[7] This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the Child involved or to prevent the further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9001 *et. seq*.

expedited basis to hear from the Parties and schedule a final hearing on the merits of this Petition.

**WHEREFORE**, Petitioner respectfully prays for the following relief:

1. Set a preliminary hearing on an expedited basis to hear from the Parties[8] and schedule a final hearing on the merits of this Petition;

2. Command the Respondent to appear in this Court with A.P.R. and show cause why the child should not be immediately returned to Mexico;

3. Upon a final hearing on the merits of the Petition, enter a final judgment in Petitioner's favor directing a prompt return of A.P.R. to her habitual residence of Mexico;

4. Petitioner respectfully requests that this Court award her all costs and fees, including transportation costs, incurred to date as required by 22. U.S.C. § 9007(b).

5. Such other and further relief as this Court deems just and proper.

Respectfully submitted, this the 8th day of May, 2020.

/s/ Amy Vukovich

**Amy Vukovich**
Legal Aid of North Carolina
P.O. Drawer 1731
Raleigh, NC 27602
(919) 863-1453
Fax: 919-
amyv@legalaidnc.org
North Carolina Bar Number: 32975
**Teandra Miller**
North Carolina Bar Number: 22196
teandram@legalaidnc.org

---

[8] Petitioner is unable to travel into the United States for any hearing at this time. She respectfully requests that counsel appear on her behalf for the preliminary hearing and that video or another form of remote participation be permitted at future hearings.

>**Sarah Elisabeth Mabry-Caraffa**
>North Carolina Bar Number: 51133
>sarahc2@legalaidnc.org
>**Rebecca Dixon Eden**
>North Carolina Bar Number: 48203
>beccae@legalaidnc.org

Petitioner, Norma Edith Rodriguez Sanchez, being first duly sworn, deposes and says that she is the Petitioner in the foregoing Petition under the Hague Convention; that she has read the foregoing document and knows the contents thereof and that they are true of her own personal knowledge, except as to matters and things therein alleged on information and belief, and as to those, she believes them to be true.

This is the __05__ day of May 2020.

*Norma Rodriguez Sanchez*
NORMA EDITH RODRIGUEZ SANCHEZ